UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DCC PROPANE, LLC, | ) | 3:23-CV-00950 (SVN) |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KMT ENTERPRISES, INC. | ) | |
|     *Defendant*. | ) | June 11, 2024 |

### RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

In this diversity action, Plaintiff DCC Propane, LLC brings common law claims for negligence and recklessness against Defendant KMT Enterprises, Inc., arising out of Defendant's delivery of No. 2 heating oil to Plaintiff. Defendant moves to dismiss Plaintiff's complaint in its entirety, alleging that it is fully preempted by the Hazardous Materials Transportation Act (HMTA), 49 U.S.C. § 5101 *et seq.*, or, in the alternative, that the recklessness cause of action fails to state a claim upon which relief can be granted. Because Plaintiff's claims are preempted by the HMTA, Defendant's motion is GRANTED in full. As leave to amend would be futile in these circumstances, judgment shall enter in favor of Defendant.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff's complaint contains the following allegations, which are taken as true for the purposes of Defendant's motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is in the business of providing oils and propane for residential, agricultural, commercial, and industrial uses. Compl., ECF No. 1 ¶ 5. Defendant is in the business of trucking and delivering oils and propane. *Id.* ¶ 7. Defendant was hired to deliver 10,000 gallons of heating oil to Plaintiff at a property owned by Plaintiff in Putnam, CT. *Id.* ¶¶ 6, 8. During the oil delivery on February 15, 2022, the tank into which the oil was being offloaded began to overflow. *Id.* ¶¶

8, 9.  This overflow lasted for at least seven minutes, during which Defendant's employee sat inside the cab of his truck, not monitoring the filling.  *Id.* ¶ 10.  The overflowing oil from the tank permeated the ground beneath the tank, contaminating and polluting the soil and groundwater.  *Id.* ¶ 11.

Plaintiff then filed the instant complaint, which alleges two common law counts against Defendant, for negligence and recklessness.  First, Plaintiff claims it was Defendant's negligence that caused the oil to overflow and spill, in that Defendant, its agents, and its employees failed to offload the oil using a reasonable standard of care, including by failing to "stick" or "otherwise confirm the available capacity of the tank"; to appropriately monitor the offloading; to employ a qualified individual; and to be alert and aware during the offloading.  *Id.* ¶ 12 (Negligence). Second, Plaintiff claims that Defendant's conduct evidenced "reckless disregard of the law regulating the transportation of hazardous materials" and reckless indifference to the rights of Plaintiff, in that Defendant did not take measures to ensure the offloading was attended by a qualified person who had an unobstructed view of the tank and delivery hose, and Defendant knew of the inherent dangers of transporting hazardous material and disregarded them.  *Id.* ¶ 12 (Recklessness).  As a result of Defendant's conduct, Plaintiff suffered property damage and $500,000 in damages to remediate the soil underneath and around the tank, and further expenses dealing with the "investigation, defense, and compliance with environmental regulation enforcement." *Id.* ¶¶ 14–15.  Throughout its complaint, Plaintiff repeatedly invokes the standards of the Hazardous Materials Regulations (HMR) set forth in 49 C.F.R. § 177.834 relating to the unloading of cargo tanks, and contends Defendant violated them.

Defendant moves to dismiss Plaintiff's complaint in its entirety, arguing that Plaintiff's common law claims are preempted by the federal HMTA and that, in any event, Plaintiff has failed to sufficiently allege that Defendant acted recklessly.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678.  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

The same general rules apply when a preemption argument is raised in a motion to dismiss. *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 444 (2d Cir. 2015) ("[W]hen considering

3

a preemption argument in the context of a motion to dismiss, the factual allegations relevant to preemption must be viewed in the light most favorable to the plaintiff.  A district court may find a claim preempted only if the facts alleged in the complaint do not plausibly give rise to a claim that is not preempted.").  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III.   PREEMPTION

As explained below, the Court finds that Plaintiff's negligence and recklessness claims are preempted by the HMTA.  Moreover, even if the recklessness claim were not preempted, it fails to state a cognizable claim for relief.  Defendant's motion is therefore GRANTED.  Because Plaintiff's claims are preempted, and because Plaintiff has not requested leave to amend, the Court will not grant leave to amend the complaint.

#### A.   Preemption in General

Under the Supremacy Clause, the Constitution and federal statutes "shall be the supreme Law of the Land . . . [the] Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  The doctrine of preemption is a "corollary of the Supremacy Clause," which allows Congress to "set aside the laws of a State."  *Buono v. Tyco Fire Products, LP*, 78 F.4th 490, 495 (2d Cir. 2023) (citation omitted).  "When federal law preempts nonfederal law, the Supremacy Clause requires courts to follow federal, not state, law."  *Id.* (internal quotation marks and citation omitted).

The Second Circuit has recognized three forms of preemption:  "(1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no

room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." *Id.* (citing *Figueroa v. Foster*, 864 F.3d 222, 227–28 (2d Cir. 2017)). Only express preemption is relevant here.

When faced with an express preemption clause in a federal statute, a court must "focus[] on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Id.* (citing *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 594, (2011)). Even if "a federal law contains an express pre-emption clause," the "question of the substance and scope of Congress' displacement of state law still remains." *Id.* at 495–96 (citing *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76, (2008)).

B. <u>Preemption Under the HMTA</u>

The HMTA was intended to "protect against the risks to life, property, and the environment that are inherent in the transportation of hazardous material in intrastate, interstate, and foreign commerce." 49 U.S.C. § 5101. It contains no private right of action, but allows the Attorney General to enforce its provisions, *see* 49 U.S.C. § 5122, and provides for civil and criminal penalties for violations, 49 U.S.C. §§ 5123–5124. Under the HMTA, the Department of Transportation (DOT) has the authority to promulgate hazardous materials regulations. 49 U.S.C. § 5103(b). DOT in turn delegates that authority, generally, to the Pipeline and Hazardous Materials Safety Administration (PHMSA). 49 C.F.R. § 1.97(b).

The HMTA contains an express preemption clause, which is the focus of the Court's inquiry in this case. The preemption provision provides, in relevant part, that "a law, regulation, order, or other requirement of a State . . . about any of the following subjects, that is not substantively the same as a provision of this chapter, a regulation prescribed under this chapter, or

5

a hazardous materials transportation security regulation or directive issued by the Secretary of Homeland Security, is preempted[.]" 49 U.S.C. § 5125(b)(1). These "subjects" include the "packing, repacking, handling, labeling, marking, and placarding of hazardous material," among others. 49 U.S.C. § 5125(b)(1)(B). This preemption clause sets forth two requirements—first, the nonfederal law must be "about" an enumerated subject and second, the nonfederal law must not be substantively the same as the HMTA, or the HMR promulgated thereunder. *Buono*, 78 F.4th at 496–97. The HMR define "substantively the same" as "conform[ing] in every significant respect to the Federal requirement," though it permits "[e]ditorial and other similar de minimis changes." 49 C.F.R. § 107.202(d).

### C. Plaintiff's Negligence Claim

The Court holds that Plaintiff's negligence claim is preempted under the HMTA.

As a threshold matter, Plaintiff's common law claims are "requirements of a State" that can be preempted under the HMTA's preemption provision. *See Buono*, 78 F.4th at 499 ("As an initial matter, [plaintiff's] common-law claims are nonfederal 'requirements of a State' within the meaning of 49 U.S.C. § 5125(b)(1).") (citing *Riegel v. Medtronic*, 552 U.S. 312, 324 (2008)) ("Absent other indication, reference to a State's 'requirements' [in a preemption clause] includes its common-law duties."). Further, it is undisputed that the first prong of the HMTA's preemption test is met, as Plaintiff does not dispute that its complaint is "about" the "handling" of hazardous materials. *See* Pl.'s Opp. Br., ECF No. 27 at 11 (stating that allegations are "undeniably 'about'"

topics covered by the HMR).[1]  Thus, the question for the Court is whether the common law requirements at issue here are "substantively the same" as the HMTA.

In *Buono*, a recent Second Circuit decision that is highly relevant here, the Second Circuit held that a plaintiff's common law strict-liability and negligence claims that arose from the explosion of a tank in a fire suppression system were preempted under the HMTA. 78 F.4th at 493. The parties agreed that the tank was "manufacture[d] in compliance" with relevant regulations, *id.* at 494 n.1, but the complaint had alleged that Defendant had failed to warn Plaintiff regarding the dangers of overfilling the tank. *Id.* at 499. In holding that the plaintiff's common law claims were preempted, the Second Circuit focused significant attention on whether the claims were about one of the enumerated subject-matters—the "marking" of hazardous materials—and found that they were. *Id.* at 497–99. Then, in a briefer discussion, it found that the plaintiff's common law claims for negligence and strict liability were not substantively the same as the federal requirements under the HMTA and HMR. *Id.* at 499. The court noted that the plaintiff had not identified which "provision of the HMTA or HMR" was substantively the same as his common law claims but that, "[i]n any event," the claims were preempted because they "impose[d] conditions beyond federal law." *Id.* at 500. Specifically, the court recognized that a civil violation of the HMTA or HMR must be committed "knowingly," and a criminal violation must be committed "knowingly, willfully, or recklessly," whereas the plaintiff's negligence and strict

---

[1] For the first time at oral argument, Plaintiff briefly suggested that its claims were not "about" one of the enumerated subjects. In its briefing, however, Plaintiff conceded the opposite. *See* ECF No. 27 at 11 (recognizing that Plaintiff's allegations are "undeniably 'about' a topic covered by the HMR"). Arguments raised for the first time at oral argument are generally deemed waived. *See Errato v. Am. Express Co.*, No. 3:18-CV-1634 (VAB), 2019 WL 3997010, at *10 n.5 (D. Conn. Aug. 23, 2019) (citing cases). Thus, to the extent Plaintiff intended to contradict its briefing at oral argument, the Court does not consider this new argument. Regardless, on the record before the Court, the Court agrees with Defendant that Plaintiff's claims relate to the "handling" of hazardous materials. *See* Def.'s Br., ECF No. 21-1 at 5–6.

liability claims "require[d] a less culpable mental state and thus sweep more broadly than federal law." *Id.* Therefore, the plaintiff's common law claims were fully preempted. *Id.* at 502.

Abiding by the Second Circuit's holding in *Buono*, the Court must conclude that Plaintiff's negligence claim is preempted by the HMTA. Because the Second Circuit has squarely held that common law negligence claims "require a less culpable mental state" than the HMTA and thus are not substantively the same as the HMTA, Plaintiff's negligence claim must be dismissed.[2]

Plaintiff tries to avoid this straightforward reading of *Buono* in several ways, to no avail.

First, the Court rejects Plaintiff's contention that *Buono* only applies where a plaintiff seeks to impose duties that go *beyond* the requirements of the HMTA. Plaintiff characterizes its complaint as merely alleging Defendant's "failure to comply with specific requirements of the HMR." *See* ECF No. 27 at 8. It points out that in *Buono*, the plaintiff's failure to warn claim would have required a warning that "*exceeded* what was required by federal law," and argues that this distinction puts this case on entirely different footing than *Buono*. *See id.* at 6–7; *see also Buono*, 78 F.4th at 494 n.1 (noting that the tank was manufactured in compliance with regulations); *Roth v. Norfalco LLC*, 651 F.3d 367, 372 (3d Cir. 2011) (finding common law claims preempted where it was "undisputed that [defendant] fully complied with the HMR requirements"). Here, Plaintiff claims, its allegations are all clearly tethered to HMR violations and "entirely consistent" with the HMR, *see* ECF No. 27 at 8–10, 11, and therefore, according to Plaintiff, *Buono*'s holding should not control.

But at least one of Plaintiff's allegations, negligence paragraph 12(b), seems to impose requirements beyond those of the HMTA or HMR. In this paragraph, Plaintiff alleges that

---

[2] Plaintiff argued for the first time at oral argument that *Buono*'s discussion of the differing mental states was dicta. The Court does not agree; the mental states discussion appears to be the primary reason the Second Circuit held as it did.

Defendant failed to "stick" or otherwise confirm the available capacity of the tank before starting the offload, when it knew or should have known of the need to do so. Compl. ¶ 12(b). Plaintiff states that the requirement to "stick" or confirm the tank capacity comes from an agency guide, not any provision of the law or regulation thereunder. *See* ECF No. 27 at 9. While the Court may take judicial notice of agency guidance even on a motion to dismiss, *see Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59–60 (2d Cir. 2016), the guide itself states that it is not "to be considered as[] applicable regulations," *see* Def.'s Reply in Supp. of Mot. to Dismiss Ex. A, ECF No. 29-1 at 3. Plaintiff has pointed to no other source for this requirement in the HMTA or HMR. Thus, the Court does not necessarily agree with Plaintiff's characterization of its allegations as being "entirely consistent" with the HMR.

More fundamentally, even if the Court did accept Plaintiff's characterization of the allegations in the complaint, it remains bound by *Buono*'s holding that a common law negligence claim requires a lesser mental state than a civil violation of the HMTA, and therefore "sweep[s] more broadly than federal law." 78 F.4th at 500. To be sure, Plaintiff makes some compelling arguments for why the Second Circuit could have ruled differently. For instance, it argues that, although the standard for a civil violation of the HMTA requires a person to act "knowingly," the HMTA's definition of "knowingly" is actually akin to a negligence standard. *See* 49 U.S.C. § 5123(a) (a person acts "knowingly" when "a reasonable person acting in the circumstances and exercising reasonable care would have" knowledge of facts giving rise to a violation). The Department of Transportation (DOT) has recognized this interpretation. *See In the Matter of: Mountain States Trailer, Inc.*, (U.S. DOT No. 1010685) 2013 WL 7086986, at *2 (recognizing that § 5123 is "akin to a negligence standard"). It appears the parties in *Buono* may not have presented the Second Circuit with the argument that the HMTA's definition of "knowingly" is

quite similar to a negligence standard.  Were this Court interpreting the statute in the first instance, without the benefit of *Buono*, this argument may well have carried significant force.  But the Court is compelled to abide by *Buono*, which clearly held that a common law negligence claim required a "less culpable" mental state than the HMTA.  78 F.4th at 500.[3]

Plaintiff's citation to a relevant agency interpretation likewise cannot overcome *Buono*. In another context, the PHMSA, to which DOT has delegated authority to decide applications for preemption determinations and preemption waivers, has explicitly stated that common law tort claims would not be preempted in certain situations, such as when the defendant has not complied with the HMR.  *See Common Law Tort Claims Concerning Design and Marking of DOT Specification 39 Compressed Gas Cylinders* (PD-34), 2012 WL 2521268, at *39570 (July 3, 2012) (finding claims preempted, but noting that there would not be "preemption of a common law tort action for damages when the packaging" does not comply with the HMR).  While agency interpretations are persuasive authority, but they are not binding on this Court.  *See, e.g.*, *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 613 n.3 (2011) ("Although we defer to the agency's interpretation of its regulations, we do not defer to an agency's ultimate conclusion about whether state law should be pre-empted.").

---

[3] In advance of oral argument, the Court sought the parties' views on the impact of 49 U.S.C. § 5125(h), which provides that the preemption section of the HMTA "does not apply to any procedure, penalty, required mental state, or other standard utilized by a State, political subdivision of a State, or Indian tribe to enforce a requirement applicable to the transportation of hazardous material."  Ultimately, the parties and the Court identified limited authority on the meaning of this provision, finding only a decision of the PHMSA holding that it lacked authority to issue a preemption decision on the issue of whether a state improperly imposed a strict liability standard in a state regulation, as 5125(h) provides that the preemption provision does not apply to such a claim. *See Hazardous Materials:  Oregon Hazardous Waste Management Regulation*, 84 FR 50882-01 (PDA-39(R)), 2019 WL 4671466.  *Buono* did not mention § 5125(h) in its discussion about the differing mental states for a negligence claim and an HMTA violation.  As Plaintiff did not advance a theory in its opposition brief that § 5125(h) would allow its negligence claim to proceed, and in the absence of any court decisions—controlling or otherwise—suggesting as much, the Court declines to interpret § 5125(h) as reviving Plaintiff's negligence claim.

Nor do any of the cases cited by Plaintiff in which parties pursued common law claims premised on HMR violations alter the Court's conclusion. *See* ECF No. 27 at 11–12. In the four cases cited by Plaintiff, courts found (or at least suggested) that plaintiffs would have a tort claim for damages against defendants who violated the HMR. *See Poliskie Line Oceaniczne v. Hooker Chem. Corp.*, 499 F. Supp. 94, 97 (S.D.N.Y. 1980) (finding, after bench trial, that defendant negligently violated the HMR and was liable to plaintiff); *Clark v. Velsicol Chem. Corp.*, 944 F.2d 196, 196–97 (4th Cir. 1991) (affirming dismissal of case for lack of jurisdiction, but recognizing that plaintiffs' negligence claim was based on HMR violation); *Key v. Liquid Energy Corp.*, 906 F.2d 500, 505–06 (10th Cir. 1990) (affirming trial court verdict that defendant owed a legal duty to plaintiffs based in HMR); *Galjour v. Gen. Am. Tank Car Corp.*, No. CIV. A. 87-5003, 1991 WL 121193, at *1 (E.D. La. June 24, 1991) (recognizing that a violation of the HMR could "serve as evidence for determining the standard of care to be applied to a person engaged in shipping hazardous materials" in negligence claim). However, none of these cases discuss, or even mention, preemption; therefore, they do not provide an answer for the question presented to this Court. Further, these cases predate *Buono* by several decades, and, unlike *Buono*, are not binding on this Court. Thus, though these cases provide support for Plaintiff's general position, they do not require the result urged by Plaintiff, in light of *Buono*.

And, finally, the Court finds distinguishable the line of cases arising from railroad accidents within the jurisdiction of the Sixth Circuit. *See, e.g.*, *In re E. Palestine Train Derailment*, No. 4:23CV0242, 2024 WL 1094616, at *8 (N.D. Ohio Mar. 13, 2024); *Tipton v. CSX Transportation, Inc.*, No. 3:15-CV-311-TAV-CCS, 2016 WL 11501426, at *15 (E.D. Tenn. July 7, 2016). The Sixth Circuit has held that HMTA preemption and preemption under the Federal Railroad Safety Act (FRSA) should be analyzed similarly, despite that FRSA's preemption clause is materially

11

different from the HMTA's. *See Tipton*, 2016 WL 11501426, at *13 (collecting cases). Specifically, the FRSA was amended in 2007 to exclude from preemption (in relevant part) any state law cause of action for "personal injury, death, or property damage" that alleges that a party "failed to comply with a Federal standard of care established by a [relevant] regulation." 49 U.S.C. § 20106(b)(1)(A). The HMTA contains no such savings clause, yet courts in the Sixth Circuit analyze FRSA and HMTA preemption similarly. *See Tipton*, 2016 WL 11501426, at *15 ("the Sixth Circuit has held that the FRSA preemption analysis applies to the HMTA"); *id.* at *13 (citing *CSX Transp., Inc. v. Public Utilities Com'n of Ohio*, 901 F.2d 497, 501–01 (6th Cir. 1990)). The Sixth Circuit's interpretation of the various preemption provisions is not binding on this Court, and Plaintiff has not pointed the Court to any Second Circuit authority that utilizes the FRSA's preemption provision as guidance in interpreting the HMTA's preemption provision, or even cites the Sixth Circuit's method with approval. Indeed, Congress has had the ability to include a savings clause like that from the FRSA in the HMTA and has not, to date, done so. *See Roth*, 651 F.3d at 378 (noting that a "savings clause exempting common law requirements from the bundle of [] non-federal laws and regulations displaced" is "[a]bsent from the HMTA"). Therefore, the Court finds this line of cases relied upon by Plaintiff inapposite.

For the reasons explained above, then, under *Buono*, Plaintiff's negligence claim must be dismissed. Plaintiff's negligence claim is both "about" the subject matter of the HMTA and HMR and is based on state law that is not "substantively the same" as the federal requirements.

D. Plaintiff's Recklessness Claim

*Buono* did not involve a common law recklessness claim. And, overall, the Court has found scant authority on this issue. Nonetheless, the Court holds that this claim, too, is preempted.

12

As discussed in *Buono*, civil violations of the HMTA must be committed "knowingly," while criminal violations must be committed "knowingly," "willfully," or "recklessly." *Buono*, 78 F.4th at 500 (citing 49 U.S.C. §§ 5123, 5124). A person acts "recklessly" for purposes of the HMTA when "the person displays a deliberate indifference or conscious disregard to the consequences of that person's conduct." 49 U.S.C. § 5124(d). Under Connecticut common law, recklessness is "more than negligence, more than gross negligence"—in other words, it is "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Scandul v. Student Transportation of Am., Inc.*, No. 3:16-CV-58 (JBA), 2017 WL 1086766, at *2 (D. Conn. Mar. 22, 2017) (citing *Bordonaro v. Senk*, 109 Conn. 428, 429 (1929) and *Dubay v. Irish*, 542 A.2d 711, 718 (Conn. 1988)).

Here, of course, Plaintiff has alleged a civil claim, not a criminal one. Because the recklessness standard under Connecticut law would impose a different mental state standard than that required for a civil violation of the HMTA, a common law recklessness claim is not substantively the same as a civil HMTA claim, under the reasoning in *Buono*. Although civil violations of the HMTA arise when a person has "actual knowledge," or a reasonable person would have such knowledge, *see* 49 U.S.C. § 5123(a)(1)(A–B), and recklessness generally falls somewhere in between those two, *see Borden v. United States*, 593 U.S. 420, 426 (2021) (noting that, in the criminal context, recklessness falls in between "knowledge" and "negligence"), it is the fact that it is a *different* standard that carries the day. *See* 49 C.F.R. § 107.202 (defining "substantively the same" as "conform[ing] in every significant respect to the Federal requirement," with only "[e]ditorial and other similar de minimis changes" permitted). The preemption provision of § 5125(b) does not distinguish between requirements that are more or less restrictive than the

13

HMTA or HMR—it excludes from its scope only those requirements that are "substantively the same."

The purpose of the preemption requirement is "regulatory uniformity."  *Buono*, 78 F.4th at 496.  In amending the HMTA in 1990, Congress acknowledged as much.  Hazardous Materials Transportation Uniform Safety Act of 1990, Pub. L. No. 101-615 § 2(3), 104 Stat. 3244, 3245 (1990) (current version at 49 U.S.C. § 5101 *et seq.*) (local and state laws had "create[ed] the potential for unreasonable hazards in other jurisdictions and confounding shippers and carriers which attempt to comply with multiple and conflicting . . . regulatory requirements" and that "in order to achieve greater uniformity and to promote the public health, welfare, and safety at all levels, Federal standards for regulating the transportation of hazardous materials . . . are necessary and desirable"); *see also Chlorine Institute, Inc. v. California Highway Patrol*, 29 F.3d 495, 496 (9th Cir. 1994) (recognizing that Congress enacted the HMTA "to replace a patchwork of state and federal laws and regulations. . . with a scheme of uniform, national regulations") (cleaned up).

The Court finds that allowing Plaintiff to proceed with its recklessness claim—when the mental state required does not match with the mental state required for a civil violation of the HMTA—would defeat the purpose of the uniformity Congress intended to impose in this highly regulated area of law.  As the requirements Plaintiff seeks to impose through its recklessness claim are not substantively the same as those required for a civil HMTA claim, and as Plaintiff does not contend that its claim avoids preemption because it is or could be substantively the same as a *criminal* HMTA claim, the Court finds that the recklessness claim is preempted.

The Court acknowledges Plaintiff's argument that preemption of state law claims may leave a tort victim without a remedy, even if a defendant is alleged to have acted negligently or recklessly under state law.  But Defendant is correct that the HMTA does not contain a private

14

right of action, and that Congress could have—but has not—exempted claims like those Plaintiff has brought from the HMTA's preemption provision. Ultimately, the language of the preemption provision and the Second Circuit's holding in *Buono* constrain the Court to find Plaintiff's claims fully preempted.

## IV.     FAILURE TO STATE A RECKLESSNESS CLAIM

For purposes of completeness, the Court also addresses Defendant's argument that Plaintiff's recklessness claim is not adequately alleged. Even were the Court to find Plaintiff's recklessness claim not preempted, it would grant Defendant's motion to dismiss the recklessness claim on the alternative ground that it fails to state a claim for which relief can be granted.

Plaintiff's allegations of recklessness state that the "reckless disregard" of Defendant, who was in the business of trucking and delivering oils and propane, Compl. ¶ 7, led to the oil spill, because it knew of its obligations under the HMR to hire a qualified person and to attend the offloading accordingly, but disregarded those obligations nonetheless. *See* Compl. ¶ 12 (Recklessness).

The Court agrees that these allegations are insufficient to state a claim for recklessness. The allegations of knowledge and conscious disregard on the part of Defendant are largely conclusory, and do not clearly distinguish Plaintiff's recklessness claim from its negligence claim. *See Smith v. Lynk*, 410 F. Supp. 3d 407, 415 (D. Conn. 2019) (recklessness requires "something *more* than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid them") (emphasis added); *Faber*, 648 F.3d at 104 (noting that the Court is not bound to accept legal conclusions masquerading as factual allegations). Plaintiff's allegations common to both claims—that Defendant's employee "did not monitor the filling" and "sat inside the cab of his truck" during the overflow, Compl. ¶ 10—combined with its conclusory

allegations of knowledge, do not provide sufficient "additional allegations as to the wrongful acts or omissions" by Defendant to state a claim for recklessness. *See Emmelmann v. Am. & Foreign Ins. Co.*, No. CIV.A303CV02144 AWT, 2006 WL 861015, at *4 (D. Conn. Mar. 31, 2006) (dismissing recklessness claim that relied on the same fact pattern as negligence count). Indeed, the HMR violations which are the basis of the recklessness claim are also incorporated in the negligence claim.[4] *Compare* Compl. ¶¶ 12(a-b) (Recklessness) *to id.* ¶¶ 12(c-d) (Negligence). While is a close question whether Defendant employee's alleged failure to monitor the offload of the oil for at least seven minutes was more than mere negligence, ultimately, Plaintiff's allegations are simply too conclusory to state a plausible claim for recklessness. *See Smith*, 410 F. Supp. 3d at 417 (noting it is insufficient, in seeking to distinguish a recklessness and negligence claim, to "use language conclusorily stating that a defendant was reckless"). Thus, were Plaintiff's recklessness claim not preempted, it would be dismissed for failure to state a claim.[5]

## V. CONCLUSION

For the reasons described herein, Defendant's motion to dismiss is GRANTED. Even construing Plaintiff's claims in the light most favorable to it, Plaintiff would not be able to avoid federal preemption of its claims. Plaintiff has not requested leave to amend. For these reasons, this dismissal is without leave to amend. *See MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F. 4th 77, 90 (2d Cir. 2023) (district courts may deny leave to amend when amendment would be futile); *Melendez v. ONE Brands, LLC*, No. 18-CV-06650 (CBA) (SJB), 2020 WL

---

[4] The Court need not wade into the parties' dispute over whether the HMR provisions cited by Plaintiff actually apply to Defendant on the facts of this case, or whether the No. 2 heating oil delivery was actually subject to other provisions of the HMR. In any event, this dispute goes well beyond the four corners of the complaint and any properly considered external material. *See* ECF No. 21-1 at 12; ECF No. 27 at 12; Def.'s Reply in Supp. of Mot. to Dismiss Ex. B, ECF No. 29-2 (safety data sheet for No. 2 fuel oil).

[5] Were this the only deficiency, the Court would offer Plaintiff an opportunity to amend its complaint to revise its allegations of recklessness. Because the claim is preempted, however, leave to amend would be futile.

1283793, at *9 (E.D.N.Y. Mar. 16, 2020) (where a state law claim is preempted by federal law, leave to amend with respect to that theory would be futile).

The Clerk is directed to enter judgment for Defendant and close this case.

**SO ORDERED** at Hartford, Connecticut, this 11th day of June, 2024.

                                   _/s/ Sarala V. Nagala_
                                   SARALA V. NAGALA
                                   UNITED STATES DISTRICT JUDGE